U.S. Department of Agriculture
Food and Nutrition Service
Administrative Review
Alexandria, Virginia 22302

| | |
|---|---|
| Perez Grocery, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v.  ) | Case Number: C0166618 |
| ) | |
| Retailer Operations Division, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

## FINAL AGENCY DECISION

The U.S. Department of Agriculture (USDA), Food and Nutrition Service (FNS) finds that there is sufficient evidence to support the determination by the Retailer Operations Division to impose a permanent disqualification from participating as an authorized retailer in the Supplemental Nutrition Assistance Program (SNAP) against Perez Grocery (Appellant).

## ISSUE

The issue accepted for review is whether the Retailer Operations Division took appropriate action, consistent with Title 7 Code of Federal Regulations (CFR) § 278.6(a), (c) and (e)(1)(i) in its administration of SNAP, when it imposed a Permanent Disqualification against Appellant on March 17, 2014.

## AUTHORITY

Title 7 United States Code (USC) § 2023 and its implementing regulations at 7 CFR § 279.1 provide that "A food retailer or wholesale food concern aggrieved by administrative action under § 278.1, § 278.6 or § 278.7 ... may ... file a written request for review of the administrative action with FNS."

## STATEMENT OF THE CASE

In a letter dated February 5, 2014, the Retailer Operations Division informed Appellant that it was in violation of the terms and conditions of the SNAP regulations, based on SNAP benefit transactions that "establish clear and repetitive patterns of unusual, irregular, and inexplicable activity for your type of firm." This letter of charges states, in relevant part, "Based on this

1

information, we are charging your firm with trafficking, as defined in Section 271.2 of the SNAP regulations. As provided by Section 278.6(e)(1) of the SNAP regulations, the sanction for trafficking is permanent disqualification." The letter also states that ". . . under certain conditions, FNS may impose a civil money penalty (CMP) . . . in lieu of a permanent disqualification of a firm for trafficking."

Mr. David Silbiger, counsel for Appellant, replied with written correspondence dated February 21, 2014, offering the following responses with regard to the letter of charges dated February 5, 2014:

- Appellant, through counsel, contends the owner and his wife deny any involvement in trafficking;
- Appellant, through counsel, contends credit was extended to customers to assist them, and the owners did not know this process was illegal. Appellant kept records in a notebook (pages were submitted as examples), and did not ever charge interest on the credit accounts. Counsel submitted 79 letters from Appellant's customers expressing support and gratitude to the owners, and that it would be a hardship to the community to disqualify Appellant; and
- Appellant, through counsel, requests a written reprimand and/or probationary period, rather than the permanent disqualification.

After giving consideration to the evidence and the firm's reply, the Retailer Operations Division notified Appellant in a letter dated March 17, 2014, that the firm was being permanently disqualified from participation as an authorized retailer in SNAP in accordance with § 278.6 (c) and § 278.6(e)(1) for trafficking violations. This determination letter also states that Appellant's eligibility for a trafficking CMP according to the terms of § 278.6(i) of the SNAP regulations was considered. However, the letter stated to Appellant that ". . . you are not eligible for the CMP because you failed to submit sufficient evidence to demonstrate that your firm had established and implemented an effective compliance policy and program to prevent violations of the Supplemental Nutrition Assistance Program."

Appellant, through counsel, appealed the Retailer Operations Division's assessment and requested an administrative review of this action, which was received March 31, 2014. The appeal was granted.

## **ANALYSIS AND FINDINGS**

In administrative proceedings involving disputes of regulatory actions or inactions, USDA assumes the responsibility of establishing a sufficient factual record to prove or disprove the allegations of the appeal. The record is then reviewed in light of the evidentiary standards and analytical frameworks established by various courts of law.

In appeals of adverse actions, Appellant bears the burden of proving by a preponderance of the evidence that the administrative actions should be reversed. That means Appellant has the

burden of providing relevant evidence which a reasonable mind, considering the record as a whole, might accept as sufficient to support a conclusion that the matter asserted is more likely to be true than not true.

I

The controlling statute in this matter is contained in the Food and Nutrition Act of 2008, as amended, 7 USC § 2021 and Section 278 of Title 7 of the CFR. Part 278.6(e)(1)(i) establishes the authority upon which a permanent disqualification may be imposed against a retail food store or wholesale food concern in the event that personnel of the firm have engaged in trafficking of SNAP benefits.

7 CFR § 278.6(e)(1)(i) reads, in part, "FNS shall . . . . disqualify a firm permanently if . . . personnel of the firm have trafficked as defined in § 271.2." Trafficking is defined, in part, in 7 CFR § 271.2, as "the buying or selling of [SNAP benefits] or other benefit instruments for cash or consideration other than eligible food."

In addition, 7 CFR § 278.6(a) states, in part, "FNS may disqualify any authorized retail food store . . . if the firm fails to comply with the Food and Nutrition Act of 2008, as amended, or this part. Such disqualification shall result from a finding of a violation on the basis of evidence that may include facts established through on-site investigations, inconsistent redemption data, evidence obtained through a transaction report under an *electronic benefit transfer system* . . ." (Emphasis added.)

II

The charges under review were based on an analysis of SNAP electronic benefit transfer (EBT) data during the period from July 2013 through December 2013, and involved the following patterns of SNAP transaction characteristics indicative of trafficking:

- Multiple consecutive purchase transactions made too rapidly to be credible;
- Multiple transactions made from the same benefit account in unusually short time frames; and,
- Excessively large transactions.

III

The issue in this review is whether, through a preponderance of evidence, it is more likely true than not true that the questionable transactions were the result of trafficking.

The file indicates that in reaching a disqualification determination, the Retailer Operations Division considered information obtained during a store visit conducted on July 23, 2013. FNS contracted staff visited Appellant to observe the nature and scope of the firm's operation, stock

and facilities. This information was then used by the Retailer Operations Division staff to ascertain if there were justifiable explanations for the EBT transactions by the firm that formed patterns indicative of trafficking.

The Review Summary and accompanying photographs documented the following store size, description and characteristics:

- The firm is noted as being a convenience store located in an urban/residential area;
- There is one cash register and one SNAP EBT point-of-sale (POS) terminal;
- Total square footage is estimated to be 1,100 with no additional storage areas out of public view;
- No shopping carts or hand-held baskets are available for customer use;
- There are no electronic optical scanners available for processing;
- Non-food items include household and tobacco products;
- Appellant does not sell hot food, or have seating for on-site consumption, but does have a deli, with prices posted for meats/cheese sold by weight;
- Dairy: 6-20 units of butter, canned evap. milk and sour cream; and >20 units each of milk, cheese, infant formula and ice cream;
- Fruit: >20 units of 100% fruit juice, bananas (fresh), canned peaches, baby food; 6-20 units apples (fresh), berries, oranges (fresh), canned pineapple, avocado (fresh); 2 fresh mangoes;
- Vegetables: >20 units each of canned and dried beans/carrots/mixed vegetables/yams/potatoes/tomato sauce/soup/stew/greens, peanut butter, onions(fresh), potatoes (fresh), soy infant formula, baby food and 6-20 units of peppers;
- Breads: > 20 units each of bread, cakes/muffins/pastries, cereal, rice, pasta, infant cereal, snack cakes/bars, cornmeal, oats; 6-20 units flour, frozen waffles, tortillas, biscuits;
- Meats: >20 units each of canned meats and canned fish (salmon, tuna), packaged pork products, bologna, hot dogs, eggs, and infant meats; and 6-20 units of frozen fried chicken. No fresh meats were documented as being available, other than deli meats sold by the pound;
- The accompanying photographs reflect the available check-out counter area to include a glass enclosure with an opening approximately 1.5' x 1.5' in size to pass items through and the register behind the enclosure (see photos below); and
- It was noted the store does not offer any promotional, specials, packaged or bulk items. No evidence of wholesale business such as posted prices or separate entrances for wholesale customers.





IV

The Retailer Operations Division has presented a prima facie case that Perez Grocery likely trafficked with regards to SNAP benefits. Examples of trafficking transactions will be displayed from the attachments to the letter of charges dated February 5, 2014, as shown below.

**Multiple SNAP purchase transactions were made too rapidly to be credible.**

Attachment 1 documents 47 multiple transactions in sets involving one or more households, conducted in 4 minutes or less, totaling as much as $234.06.

As previously noted, Mr. David Silbiger, counsel for Appellant, replied to the Retailer Operations Division with written correspondence dated February 21, 2014. However, while Appellant, through counsel, denied trafficking was occurring, the explanation by Appellant that clients were paying off credit accounts is not credible, based on the transaction data. It is not feasible, given the physical logistics of the check-out counter, as well as the limited detail noted in the sample ledger pages provided to show how Appellant logged the extension of credit to customers, that payments on credit accounts could occur in the timeframes shown in the example transactions by separate households below.

Further, Appellant, through counsel, contends the owners did not know that payments on credit accounts with SNAP benefits were against the regulations. However, the record indicates that Appellant signed an FNS-252, "SNAP Application for Stores" in 2001 certifying thereby that the owner read, understood and agreed with the conditions noted therein which included the following statement, in relevant part: "I accept responsibility on behalf of the firm for violations...including...:

- Trading cash for SNAP benefits (i.e. trafficking)
- Accepting SNAP benefits as payment for ineligible items
- Accepting SNAP benefits as payment on credit accounts or loans
- Knowingly accepting SNAP benefit payments from people not authorized to use them."
- Participation can be denied or withdrawn if my firm violates any laws or regulations issued by Federal, State or local agencies..."

In addition, when the firm was authorized Appellant was provided a package of material, including:

- A copy of the SNAP regulations;
- An authorization packet, which included their authorization permit and other posting materials; and
- Training material, which would have included a training module issued on a DVD which also discussed the acceptance of SNAP benefits as payments on credit accounts were not allowed.

It is apparent Appellant received the material as some of it, such as the FNS Authorization number, which would have been necessary to have in order to procure an EBT POS device. Without regard, it can be generally accepted that Appellant may have established credit accounts for some of the customers as demonstrated from the photocopies of the ledgers submitted. However, sufficient evidence or documentation has not been presented in support

6

of this contention.

Appropriate documentation may have included ledger books noting the following:

- The SNAP recipients' names and addresses;
- A detailed listing of the alleged SNAP eligible food items purchased;
- The dates of the alleged SNAP eligible food purchases; and
- The dates the payments were made on the alleged credit accounts with SNAP benefits.

Therefore, the contention relating to credit account payments with SNAP benefits has been dismissed due to the lack of credible and verifiable evidence for all of the transactions noted in the letter of charges dated February 5, 2014. As such, this contention does not provide any valid basis for dismissing the charges or for mitigating the penalty imposed.

The Retailer Operations Division has documented trafficking in Attachment 1 by examples of rapid-and-repeat transactions conducted by multiple households in *less than 4 minutes yet totaling as much as $234.06:*

|   | Terminal | Date | Time | Household | Amount | Method | Type |
|---|---|---|---|---|---|---|---|
| 1 | 00456001 | 07/06/2013 | 07:13:12 PM | *****5875 | 2.35 | Swipe | Purchase |
| 2 | 00456001 | 07/06/2013 | 07:15:19 PM | *****5154 | 155.11 | Swipe | Purchase |

*Elapsed Time: 00:02:07*

|   | Terminal | Date | Time | Household | Amount | Method | Type |
|---|---|---|---|---|---|---|---|
| 21 | 00456001 | 08/10/2013 | 02:25:01 PM | *****3792 | 18.47 | Swipe | Purchase |
| 22 | 00456001 | 08/10/2013 | 02:28:32 PM | *****6669 | 188.34 | Swipe | Purchase |

*Elapsed Time: 00:03:31*

| 23 | 00456001 | 08/11/2013 | 01:38:07 PM | *****4676 | 6.79 | Swipe | Purchase |
| 24 | 00456001 | 08/11/2013 | 01:38:53 PM | *****4408 | 74.73 | Swipe | Purchase |

*Elapsed Time: 00:00:46*

| 43 | 00456001 | 09/15/2013 | 12:22:59 PM | *****4796 | 4.19 | Swipe | Purchase |
| 44 | 00456001 | 09/15/2013 | 12:25:56 PM | *****4574 | 196.88 | Swipe | Purchase |

*Elapsed Time: 00:02:57*

| 61 | 00456001 | 10/11/2013 | 02:36:20 PM | *****2100 | 32.49 | Swipe | Purchase |
| 62 | 00456001 | 10/11/2013 | 02:38:29 PM | *****6669 | 120.19 | Swipe | Purchase |

*Elapsed Time: 00:02:09*

| 69 | 00456001 | 10/14/2013 | 12:07:20 PM | *****2218 | 24.32 | Swipe | Purchase |
| 70 | 00456001 | 10/14/2013 | 12:10:16 PM | *****6567 | 209.74 | Swipe | Purchase |

*Elapsed Time: 00:02:56*

| 93 | 00456001 | 12/15/2013 | 04:42:45 PM | *****6924 | 22.61 | Swipe | Purchase |
| 94 | 00456001 | 12/15/2013 | 04:43:56 PM | *****7164 | 86.19 | Swipe | Purchase |

*Elapsed Time: 00:01:11*

Given the timeframes of the transactions noted above, it does not seem to be logistically possible for these households and the store staff to conduct the following action steps:

- Transport the items for purchase of these dollar totals to the very limited counter space without the availability of either shopping carts or hand-held baskets;
- Place all of the items on this very limited counter space for processing;
- Manually tally each of the alleged food items as the store does not operate with optical scanning technology;
- Bag the alleged food items and move them from the counter space area;
- Process the sale on the EBT POS terminal; and
- The second household then processed next, repeating the aforementioned steps, for their alleged food items in the extremely short timeframes noted for these dollar amounts.

Even if any of the transactions in the sets above was a payment on a credit account, the clerk would still need to consult the ledger, find the correct recipient, note the balance due, swipe the card, allow the client to enter their PIN, wait for the transaction to be processed, and record the payment in the ledger. The ledger did not include full customer names, dates of purchases, recipient addresses, or itemize the purchase, which would make this process more difficult and time-consuming.

### Multiple SNAP purchase transactions were made from individual benefit accounts in unusually short time frames.

Attachment 2 documents the same household making back-to-back transactions in rapid order. Shown below are some examples of the 104 multiple transactions in sets by the same household, in timeframes ranging from less than 90 seconds to 24 hours, and totaling as much as $330.59, that are included in this document:

|     | Terminal | Date       | Time        | Household | Amount | Method | Type     |
|-----|----------|------------|-------------|-----------|--------|--------|----------|
| 95  | 00456001 | 07/14/2013 | 05:04:53 PM | *****6567 | 154.26 | Swipe  | Purchase |
| 96  | 00456001 | 07/14/2013 | 05:06:17 PM | *****6567 | 35.88  | Swipe  | Purchase |

*Total Violations: 2*   *Total Time: 00:01:24*   *Amount: $190.14*

| 99  | 00456001 | 12/12/2013 | 12:12:58 PM | *****4407 | 59.74  | Swipe  | Purchase |
| 100 | 00456001 | 12/12/2013 | 12:15:09 PM | *****4407 | 70.61  | Swipe  | Purchase |

*Total Violations: 2*   *Total Time: 00:02:11*   *Amount: $130.35*

|     | Terminal | Date       | Time        | Household | Amount | Method | Type     |
|-----|----------|------------|-------------|-----------|--------|--------|----------|
| 169 | 00456001 | 09/07/2013 | 11:39:31 AM | *****5154 | 156.16 | Swipe  | Purchase |
| 170 | 00456001 | 09/07/2013 | 07:59:46 PM | *****5154 | 88.00  | Swipe  | Purchase |

*Total Violations: 2*   *Total Time: 08:20:15*   *Amount: $244.16*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 173 | 00456001 | 09/10/2013 | 04:26:16 PM | *****4730 | 106.00 | Swipe | Purchase |
| 174 | 00456001 | 09/10/2013 | 06:30:33 PM | *****4730 | 53.99 | Swipe | Purchase |
| 175 | 00456001 | 09/11/2013 | 10:28:20 AM | *****4730 | 41.89 | Swipe | Purchase |
| 176 | 00456001 | 09/11/2013 | 10:50:56 AM | *****4730 | 28.54 | Swipe | Purchase |

*Total Violations: 4*　　　*Total Time: 18:24:40*　　　*Amount: $230.42*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 191 | 00456001 | 07/15/2013 | 05:17:03 PM | *****4574 | 153.62 | Swipe | Purchase |
| 192 | 00456001 | 07/15/2013 | 05:25:14 PM | *****4574 | 46.19 | Swipe | Purchase |
| 193 | 00456001 | 07/15/2013 | 07:39:01 PM | *****4574 | 66.51 | Swipe | Purchase |
| 194 | 00456001 | 07/16/2013 | 04:57:06 PM | *****4574 | 64.27 | Swipe | Purchase |

*Total Violations: 4*　　　*Total Time: 23:40:03*　　　*Amount: $330.59*

EBT customers are engaging in multiple rapid transactions at Appellant in a matter of minutes, hours, or within less than 24 hours that sum to amounts not supported by the store's eligible food stock and physical facilities.

### Excessively large purchase transactions were made from recipient accounts.

Attachment 3 contains a series of EBT transactions that are excessively large purchase transactions made from recipient accounts. The average transaction for SNAP-authorized convenience stores in the State of Maryland during the review period was $8.51. The largest purchase amount at Appellant during the review period was $209.74.

Attachment 3 lists 253 transactions ranging from $50.39 to $209.74. Shown below are some examples of single transactions over $175.00:

| Terminal | Date | Time | Household | Amount | Method |
|---|---|---|---|---|---|
| 00456001 | 10/14/2013 | 12:10:16 PM | *****6567 | 209.74 | Swipe |
| 00456001 | 09/15/2013 | 12:25:56 PM | *****4574 | 196.88 | Swipe |
| 00456001 | 08/10/2013 | 02:28:32 PM | *****6669 | 188.34 | Swipe |
| 00456001 | 08/06/2013 | 03:50:49 PM | *****5154 | 186.52 | Swipe |
| 00456001 | 09/12/2013 | 04:57:13 PM | *****4302 | 186.00 | Swipe |
| 00456001 | 11/06/2013 | 04:02:07 PM | *****5154 | 185.97 | Swipe |
| 00456001 | 10/13/2013 | 04:01:22 PM | *****4302 | 178.96 | Swipe |
| 00456001 | 12/13/2013 | 06:09:32 PM | *****6567 | 177.51 | Swipe |

Appellant's layout and inventory do not support a high percentage of transactions markedly exceeding the average transaction amount of similar SNAP authorized stores in the State. Additional information provided by the Retailer Operations Division included data that clients shop at better stocked firms on or about the same day as conducting large transactions at Appellant. The below example households showed several high-dollar transactions at Appellant. These transactions were on the same day or within days of shopping at several full-line superstores.

9

| SM/SS | Supermarket/Superstore |
| SG/MG/LG | Small/Medium/Large - Grocery |
| BB | Bakery |
| CO | Combination Store |
| CS | Convenience Store |
| ME/SE | Meat/Seafood Specialty |

**SNAP Household *****4730:**

This household completed four transactions at superstores (for a total of $579.08) on September 10, 2013, and then completed four transactions (totaling $174.97) at Appellant later the same day, and three additional transactions with Appellant the following day (totaling $72.42). It is unlikely that Appellant stocks items not available at the superstores, so for this household to spend at Appellant roughly 42% of what it spent at superstores within an approximately 26-hour timeframe reflects unusually large transactions for a convenience store.

| Store Name | Type | Date/Time | Amount | Household |
|---|---|---|---|---|
| | SS | 09/10/2013 11:31:00 AM | $133.69 | *****4730 |
| | SS | 09/10/2013 11:34:06 AM | $115.59 | *****4730 |
| | SS | 09/10/2013 01:06:40 PM | $132.98 | *****4730 |
| | SS | 09/10/2013 01:15:24 PM | $196.82 | *****4730 |
| PEREZ GROCERY | CS | 09/10/2013 04:26:16 PM | $106.00 | *****4730 |
| PEREZ GROCERY | CS | 09/10/2013 04:28:15 PM | $10.99 | *****4730 |
| PEREZ GROCERY | CS | 09/10/2013 06:30:33 PM | $53.99 | *****4730 |
| PEREZ GROCERY | CS | 09/10/2013 08:10:30 PM | $3.99 | *****4730 |
| PEREZ GROCERY | CS | 09/11/2013 10:28:20 AM | $41.89 | *****4730 |
| PEREZ GROCERY | CS | 09/11/2013 10:50:56 AM | $28.54 | *****4730 |
| PEREZ GROCERY | CS | 09/11/2013 01:41:21 PM | $1.99 | *****4730 |

**SNAP Household *****6567:**

This household completed a transaction for $139.36 at a supermarket on July 14, 2013, and within 27 minutes also completed two additional transactions at Appellant for a total of $190.14, which is 36% more than the amount of the supermarket transaction. This household completed unusually large transactions at Appellant in additional months as well, as listed below.

| Store Name | Type | Date/Time | Amount | Household |
|---|---|---|---|---|
| | SM | 07/14/2013 04:39:31 PM | $139.36 | *****6567 |
| PEREZ GROCERY | CS | 07/14/2013 05:04:53 PM | $154.26 | *****6567 |
| PEREZ GROCERY | CS | 07/14/2013 05:06:17 PM | $35.88 | *****6567 |
| | SM | 08/12/2013 01:51:07 PM | $242.67 | *****6567 |
| | SS | 08/12/2013 02:51:07 PM | $192.85 | *****6567 |
| PEREZ GROCERY | CS | 08/12/2013 03:29:28 PM | $174.88 | *****6567 |

| Store Name | Type | Date/Time | Amount | Household |
|---|---|---|---|---|
| PEREZ GROCERY | CS | 09/15/2013 02:19:02 PM | $145.77 | *****6567 |
| PEREZ GROCERY | CS | 09/27/2013 06:37:22 PM | $11.27 | *****6567 |
| PEREZ GROCERY | CS | 09/28/2013 04:38:47 PM | $5.00 | *****6567 |
| | SM | 10/13/2013 01:06:13 PM | $68.06 | *****6567 |
| PEREZ GROCERY | CS | 10/13/2013 04:09:08 PM | $6.00 | *****6567 |
| | BB | 10/14/2013 11:22:16 AM | $39.99 | *****6567 |
| PEREZ GROCERY | CS | 10/14/2013 12:10:16 PM | $209.74 | *****6567 |
| | SM | 10/14/2013 01:06:46 PM | $95.51 | *****6567 |
| PEREZ GROCERY | CS | 10/14/2013 01:52:40 PM | $4.85 | *****6567 |
| PEREZ GROCERY | CS | 10/14/2013 03:59:53 PM | $1.25 | *****6567 |
| PEREZ GROCERY | CS | 10/14/2013 05:18:12 PM | $18.71 | *****6567 |
| | SM | 11/15/2013 02:41:07 PM | $37.82 | *****6567 |
| PEREZ GROCERY | CS | 11/16/2013 03:29:02 PM | $106.03 | *****6567 |
| | SM | 11/16/2013 04:27:17 PM | $153.03 | *****6567 |
| | SM | 11/16/2013 05:01:23 PM | $125.91 | *****6567 |
| | LG | 11/17/2013 01:50:23 PM | $61.53 | *****6567 |
| PEREZ GROCERY | CS | 12/12/2013 01:06:33 PM | $10.21 | *****6567 |
| | LG | 12/12/2013 06:13:49 PM | $39.77 | *****6567 |
| PEREZ GROCERY | CS | 12/13/2013 04:27:04 PM | $14.98 | *****6567 |
| PEREZ GROCERY | CS | 12/13/2013 04:29:43 PM | $2.64 | *****6567 |
| PEREZ GROCERY | CS | 12/13/2013 06:09:32 PM | $177.51 | *****6567 |
| | LG | 12/13/2013 07:09:11 PM | $83.52 | *****6567 |
| | LG | 12/14/2013 07:37:01 PM | $67.98 | *****6567 |

**SNAP Household ****7164:**

This household's shopping patterns are also suspect in that its transactions with Appellant are unusually large for a convenience store, particularly in comparison to smaller transactions at superstores, small grocery stores, and meat specialty firms.

| Store Name | Type | Date/Time | Amount | Household |
|---|---|---|---|---|
| | SG | 07/15/2013 12:02:02 PM | $15.25 | *****7164 |
| PEREZ GROCERY | CS | 07/15/2013 12:42:14 PM | $3.49 | *****7164 |
| PEREZ GROCERY | CS | 07/15/2013 05:44:30 PM | $83.42 | *****7164 |
| PEREZ GROCERY | CS | 07/15/2013 06:01:21 PM | $137.66 | *****7164 |
| | SS | 07/16/2013 09:45:08 AM | $141.61 | *****7164 |
| | SG | 07/16/2013 12:43:12 PM | $10.15 | *****7164 |
| PEREZ GROCERY | CS | 07/16/2013 04:18:07 PM | $72.77 | *****7164 |
| PEREZ GROCERY | CS | 07/16/2013 04:23:54 PM | $4.25 | *****7164 |
| PEREZ GROCERY | CS | 08/15/2013 12:33:03 PM | $143.87 | *****7164 |
| PEREZ GROCERY | CS | 08/15/2013 02:52:37 PM | $46.15 | *****7164 |
| PEREZ GROCERY | CS | 08/17/2013 01:54:41 PM | $15.47 | *****7164 |
| PEREZ GROCERY | CS | 08/17/2013 03:21:21 PM | $4.49 | *****7164 |
| | SG | 08/17/2013 07:12:59 PM | $11.74 | *****7164 |
| PEREZ GROCERY | CS | 08/17/2013 08:41:00 PM | $35.91 | *****7164 |
| | SS | 08/18/2013 01:44:03 AM | $91.19 | *****7164 |
| PEREZ GROCERY | CS | 08/18/2013 01:31:32 PM | $8.38 | *****7164 |
| PEREZ GROCERY | CS | 08/18/2013 01:32:27 PM | $6.98 | *****7164 |
| PEREZ GROCERY | CS | 08/18/2013 03:13:50 PM | $5.14 | *****7164 |
| | SG | 08/18/2013 08:12:21 PM | $17.75 | *****7164 |
| | SM | 08/21/2013 12:51:04 PM | $70.00 | *****7164 |
| | ME | 08/21/2013 01:23:09 PM | $3.90 | *****7164 |
| | ME | 08/21/2013 01:32:48 PM | $9.30 | *****7164 |

| Store | Type | Date/Time | Amount | Card |
|---|---|---|---|---|
| PEREZ GROCERY | CS | 09/17/2013 04:37:55 PM | $158.00 | *****7164 |
| PEREZ GROCERY | CS | 09/17/2013 04:39:21 PM | $2.25 | *****7164 |
| | MG | 09/18/2013 02:18:08 AM | $14.35 | *****7164 |
| | MG | 09/18/2013 02:27:39 AM | $1.00 | *****7164 |
| PEREZ GROCERY | CS | 09/18/2013 03:08:27 PM | $28.32 | *****7164 |
| | MG | 09/18/2013 11:25:52 PM | $5.00 | *****7164 |
| | SG | 09/19/2013 09:50:46 AM | $10.00 | *****7164 |
| PEREZ GROCERY | CS | 09/19/2013 05:24:27 PM | $4.99 | *****7164 |
| PEREZ GROCERY | CS | 09/22/2013 02:43:31 PM | $12.00 | *****7164 |
| | ME | 11/15/2013 12:00:32 PM | $54.10 | *****7164 |
| | ME | 11/15/2013 12:06:33 PM | $10.75 | *****7164 |
| PEREZ GROCERY | CS | 11/15/2013 12:40:56 PM | $173.86 | *****7164 |
| | SM | 11/15/2013 01:05:32 PM | $103.65 | *****7164 |
| PEREZ GROCERY | CS | 11/16/2013 05:07:24 PM | $63.57 | *****7164 |
| | SG | 11/16/2013 06:09:16 PM | $10.05 | *****7164 |
| PEREZ GROCERY | CS | 11/18/2013 01:06:40 PM | $30.07 | *****7164 |
| | SG | 12/15/2013 10:22:53 AM | $11.25 | *****7164 |
| PEREZ GROCERY | CS | 12/15/2013 01:07:13 PM | $174.87 | *****7164 |
| PEREZ GROCERY | CS | 12/15/2013 04:43:56 PM | $86.19 | *****7164 |
| | MG | 12/15/2013 06:26:02 PM | $2.50 | *****7164 |
| | MG | 12/15/2013 10:07:03 PM | $30.00 | *****7164 |

A comparison of SNAP transactions at Perez Grocery with the average for convenience stores in Maryland was conducted for the review period. This comparison shows that shopping patterns at Perez Grocery are not typical and exhibit an excessive number of high dollar transactions for a store of this type. The record shows there are 85 SNAP-authorized stores within three-fourths of a mile of Perez Grocery, to include multiple convenience stores, six combination groceries, 22 small grocery stores, 10 medium grocery stores, one large grocery store, and one supermarket.

The record also reflects that customers conducting rapid, repetitive and large transactions at Appellant's firm frequently spent SNAP benefits at better-stocked and more competitively priced grocery stores, sometimes on or about the same day they shopped at Appellant's store. Based on these shopping patterns, transportation to other stores is not an issue for these EBT customers. Yet, these customers continue to spend amounts much higher than the State average within short time frames at the subject store, where the eligible food stock is more limited, and often on the same day, or within 24 hours, of their purchases at better-stocked stores.

While there are legitimate reasons why a SNAP recipient might return to a convenience store during a short period of time, the examples in Attachment 2 indicate a series of purchases that total to large amounts. In this regard, it is difficult to understand why customers who must rely on SNAP benefits to make ends meet would prefer to pay higher prices and spend the majority of their benefits at a convenience store. Spending the majority of one's SNAP benefit allotment in a convenience store when there are other larger food stores at which one also shops, which carry much more variety of foods at lower cost, is unreasonable customer behavior. Moreover, a number of the household customers listed in Attachment 2 conducted this strange shopping

pattern of shopping at Appellant's store multiple times during a short period of time. Multiple transactions over a short period of time, especially of high dollar value, are very suspicious because they are typical of stores which are attempting diminish attention to signs of trafficking.

There simply is no legitimate basis for such attraction to Perez Grocery over the full-line supermarkets or superstores in the area. In addition, there has not been presented any valid explanations by Appellant for legitimizing these transactions. As such, Appellant has not provided the clarity or justification needed to constitute valid grounds for the elimination of the current charges of violations or for mitigating the impact of those charges. Instead, the displayed transactions above conducted at Perez Grocery are indicative of trafficking.

V

In the appeal request letter received on May 31, 2014, Appellant, through counsel, appealed the Retailer Operations Division's permanent disqualification determination with the following summarized contentions, in relevant part:

- Appellant denies any involvement in trafficking, thus a permanent disqualification is unwarranted, excessive and not in the best interest of Appellant or the customers, and requests a written reprimand and/or probationary period instead; and,
- Appellant extended credit to clients to assist them when in need, and was unaware it is in violation of SNAP regulations. Appellant provided sample pages from the notebooks in which credit account information is tracked, and also submitted 79 letters from customers expressing support and gratitude for Appellant's credit policies.

The preceding may represent only a brief summary of Appellant's contentions in this matter. However, in reaching a decision, full attention and consideration has been given to all contentions presented, including any not specifically recapitulated or specifically referenced herein.

VI

Regarding Appellant's denial of violations, this review encompasses and documents the examination of the primary and relevant information in this case, the purpose of which, as noted above, is to determine whether the Appellant demonstrates, by a preponderance of the evidence, that the disqualification should be reversed. In this case, therefore, if the Appellant demonstrates by a preponderance of the evidence that it did not engage in trafficking with SNAP benefits, then such transactions will be considered legitimate and the disqualification reversed. If this is not demonstrated, the case is to be sustained. Assertions that the firm has not violated program rules, by themselves and without supporting evidence and rationale, do not constitute valid grounds for dismissal of the current charges of violations or for mitigating their impact.

13

Government analyses of stores caught in trafficking violations during on-site investigations have found that transactions involving trafficking consistently display particular characteristics or patterns. These patterns include, in part, those cited in the letter of charges. Therefore, based on this empirical data, and in the absence of any reasonable explanations for such transaction patterns, a conclusion can be drawn through a preponderance of evidence that the "unusual, irregular, and inexplicable" transactions and patterns cited in the letter of charges evidence trafficking as the most likely explanation. Nevertheless, transactions having such characteristics do sometimes have valid explanations that support that they were the result of legitimate purchases of eligible food items, and this is why opportunities are afforded to charged retailers to explain the questionable transactions cited. In this case, however, the Retailer Operations Division determined that Appellant's contentions did not outweigh the evidence.

## VII

The ownership denies any involvement in trafficking, and requests a written reprimand or a probationary period rather than the permanent disqualification penalty. When ownership signed the FNS application to become an authorized SNAP retailer, this included a certification and confirmation that the owner(s) would "accept responsibility on behalf of the firm for violations of the SNAP regulations, including those committed by any of the firm's employees, paid or unpaid, new, full-time or part-time." The violations listed on this certification document include maintaining credit accounts and trafficking. Regardless of whom the ownership of a store may utilize to handle store business, ownership is accountable for the proper handling of SNAP benefit transactions.

In addition, the Retailer Operations Division's analysis of Appellant's EBT records indicates unusual reductions in EBT activity immediately after receipt of the letter of charges dated February 5, 2014. The dollar volumes of SNAP transactions in October 2013 through January 2014 were fairly consistent: $14,769; $14,220; $15,015; and, $14,613, respectively. In February 2014, the month of receipt of the letter of charges, Appellant's total SNAP dollar volume dropped dramatically to $9,089, which is a 37% drop from the prior month. Such drastic decreases following either store visits or the issuance of charge letters, when nothing with regards to a firm's food inventory, facilities or operations has changed, are indicative of a firm reducing or ceasing trafficking activity in the belief that the government may be watching.

In any case, neither the Food and Nutrition Act of 2008 nor the regulations issued pursuant thereto cite any minimum dollar amount of cash or SNAP benefits, or number of occurrences, for such exchanges to be defined as trafficking. Nor do they cite any degrees of seriousness pertaining to trafficking of SNAP benefits. Trafficking is always considered to be most serious, even when the exchange of SNAP benefits for cash is dollar-for-dollar or is conducted by a non-managerial store clerk. This is reflected in the Food and Nutrition Act, which reads, in part, that disqualification "shall be permanent upon . . . the first occasion of a disqualification based on . . . trafficking . . . by a retail food store." In keeping with this legislative mandate, § 278.6(e)(1)(i) of the SNAP regulations states that FNS shall disqualify a firm permanently if personnel of the

firm have trafficked. There is no agency discretion in the matter of what sanction is to be imposed when trafficking is involved.

### VIII

It is Appellant's contention that disqualification would be a hardship to SNAP households who rely on the store, and submitted 79 letters signed by customers in support of Appellant. In this regard, it is recognized that some degree of inconvenience to SNAP benefit users is inherent in the disqualification from SNAP of any participating food store as the normal shopping pattern of such SNAP benefit holders may be altered due to the disqualification. Section 278.6(f)(1) of SNAP regulations provides for CMP assessments in lieu of disqualification in cases where disqualification would cause "hardship" to SNAP households because of the unavailability of a comparable participating retail food store in the area to meet their needs. However, this regulation also sets forth the following specific exception to assessments thereunder: "A CMP for hardship to SNAP households may not be imposed in lieu of a permanent disqualification." Therefore, because the matter at hand involves a permanent disqualification, this CMP provision is not applicable in the present case.

### IX

In summary, the Retailer Operations Division has presented a prima facie case that appellant likely trafficked in SNAP benefits as evidenced by: the suspicious patterns in EBT transaction data; the inadequacy of the store's stock and facility to support such transactions as observed during the store visit; and the lack of adequate explanations for customer spending habits, given that there are other, larger SNAP-authorized stores located within proximity to Appellant's store, which likely offer a greater selection of eligible food items at lower prices, and at which customers would be more likely to make larger purchases.

### CONCLUSION

The record has yielded no indication of error or discrepancy in the reported findings by the Retailer Operations Division that program benefits were accepted in exchange for cash. Therefore, based on a review of the evidence in this case, it is more likely true than not true that program violations did, in fact, occur as charged. Based on the discussion above, the determination by the Retailer Operations Division to impose a permanent disqualification against Perez Grocery from participation as an authorized retailer in SNAP is sustained.

### RIGHTS AND REMEDIES

Applicable rights to a judicial review of this decision are set forth in 7 U.S.C. § 2023 and 7 CFR § 279.7. If a judicial review is desired, the complaint must be filed in the U.S. District Court for the district in which Appellant's owner resides, is engaged in business, or in any court of record of the State having competent jurisdiction. This complaint, naming the United States as the defendant, must be filed within thirty (30) days of receipt of this decision.

Under the Freedom of Information Act (FOIA), it may be necessary to release this document and related correspondence and records upon request. If such a request is received, FNS will seek to protect, to the extent provided by law, personal information that if released could constitute an unwarranted invasion of privacy.

*Deborah Madorin*                                August 8, 2014

DEBORAH MADORIN                                  DATE
ADMINISTRATIVE REVIEW OFFICER